CLARENCE A. EGLING, Plaintiff, *v.* MARY LOMBARDO et al., Defendants.

PRENTISS M. BROWN, Administrator of the Office of Price Administration, Intervener.

City Court of Rochester, Civil Branch, June 2, 1943.

*Harold H. Stone* for defendants.

*Donald N. Morris* for plaintiff.

*Rodney C. Mertz* for intervener.

WILDER, J. The defendants have challenged the jurisdiction of this court in an action by a tenant to recover from his landlord for collecting alleged excessive rents in violation of subsection (e) of section 205 of the Federal Emergency Price Control Act of 1942 [U. S. Code, tit. 50, Appendix, § 925, subsec. (e)], authorizing recovery of $50 for each violation, plus attorney's fees and costs. The complaint alleges collection of an excess of $5 in each of five successive months and demands judgment for $250 besides attorney's fees and costs. The subsection provides that any suit or action thereunder may be brought " in any court of competent jurisdiction ".

The main objections are (1) that courts of a State may not enforce a Federal statute unless power to do so is expressly and categorically conferred upon it by the Congress; (2) that the action is to recover a penalty, of which exclusive jurisdiction is given to the Federal courts by section 256 of the Federal Judicial Code (U. S. Code, tit. 28, § 371); and (3) that, if not for a penalty, the action may be sustained only upon the theory of quasi contract which is not within the jurisdiction of the court. Defendants contend that the statute is unconstitutional, but that objection will not be here considered.

The Price Control Act is one of many conceived in a great emergency and designed solely, it is hoped, to aid a mighty national struggle for self-preservation. It is not within the province of the court to consider the query whether the Act bespeaks a purpose to " establish justice " as well as to " provide for the common defense " within the spirit of the preamble to the national Constitution, or whether the processes of justice must be suspended during a war to preserve justice.

If the effective prosecution of an all-out war makes it necessary to short-circuit fundamental principles and to substitute

for judicial discretion a mere perfunctory compliance with rigid governmental edict, the courts should bow to that necessity and accept the roles assigned to them. In doing so they may not consider the justice and equities of a case. They are, for instance, prevented from distinguishing between the innocent act of a bewildered citizen and the deliberate grasping of a shameless profiteer.

The objection that power must be specifically conferred upon the court is untenable. The United States is not a foreign sovereignty as regards the several States. Its laws are as binding upon the citizens and the courts of the States as the State laws are. If a Federal statute gives a penalty without specifying how it shall be enforced, an action will lie in a State court unless the Congress has otherwise provided. (*Claflin* v. *Houseman,* 93 U. S. 130. To the same effect is *Miles* v. *Illinois Central R. R. Co.,* 315 U. S. 698.)

If this is an action to recover a penalty, section 256 of the Federal Judicial Code vesting exclusive jurisdiction in the Federal courts would, without more, be fatal. (*Cox* v. *Lykes Bros.,* 237 N. Y. 376; *Moreno* v. *Picardy Mills,* 173 Misc. 528.) But section 305 of the Price Control Act [U. S. Code, tit. 50, Appendix, § 945] provides: '' No provision of law in force on the date of the enactment of this Act shall be construed to authorize any action inconsistent with the provisions and purposes of this Act.'' While this provision is somewhat awkward in its application to the present question, it was clearly intended to override prior legislation which would restrict its operation or defeat its purposes. The purpose of the provision in subsection (e) of section 205 authorizing the action to be brought '' in any court of competent jurisdiction '' was necessarily to accomplish something more than was effected by section 256 of the Federal Code, and that something must have been to extend jurisdiction to State courts '' of competent jurisdiction ''. That purpose is inconsistent with section 256 of the Judicial Code and therefore prevails over it under section 305 of the Price Control Act. This court is one of competent jurisdiction since it is given express jurisdiction of an action to recover a penalty by subdivision 6 of section 488 of the Charter of the City of Rochester (L. 1907, ch. 755, amd. L. 1918, ch. 495, amd. L. 1926, ch. 583).

As to the contention that this court may not take cognizance of an action on quasi contract, the law appears to be otherwise. Subdivision 2 of section 488 of the City Charter provides that the court has jurisdiction in an '' action on contract, express or implied.'' An identical provision in the Municipal Court Code

of the City of New York (L. 1915, ch. 279, as amd.) has been held to confer jurisdiction of a quasi contract (*Pache* v. *Oppenheim,* 93 App. Div. 221; *Holman & Co.* v. *Graham,* 165 Misc. 389), including a liability created by statute (*Halkin* v. *Hume,* 123 Misc. 815; *Horowitz* v. *Winter,* 129 Misc. 814; *Goldwater* v. *Mendelson,* 170 Misc. 422).

The defendants' objections are overruled and the motion to dismiss the complaint is denied. The cause is placed upon the generally reserved calendar and may be restored to the trial calendar by stipulation for the completion of proofs.

(After trial, January 20, 1944.)

This is an action by a tenant to recover from his landlord for collecting excessive rents for five successive months, in violation of subsection (e) of section 205 of the Federal Emergency Price Control Act of 1942 [U. S. Code, tit. 50, Appendix, § 925, subd. (e)]. The plaintiff claims that under the Act he is entitled to recover $250 ($50 for each month) and attorney's fees.

The defendant Mary Lombardo was owner of the premises but the dealings here involved were conducted by her two daughters, Jennie Petrone and the defendant Lucy Sofia. It is agreed that on March 1, 1942, the rent was $40 per month, and that $45 per month was collected for the period from October, 1942, through February, 1943.

The plaintiff testified that prior to October, 1942, the plaintiff had a conversation with Lucy Sofia, that Mrs. Lombardo was present and that the two demanded that the rent be raised from $40 to $45. Mrs. Sofia denies both claims, asserting that Mrs. Lombardo was not present and was too ill to handle her affairs. Mrs. Petrone testified that she was the person who talked with the plaintiff; that there was no discussion of an increase in the rate of rental; that the plaintiff requested certain decorations and repairs in order that he might rent some of the nine rooms of which the house consisted; that the plaintiff estimated the cost at from $100 to $125; that she, Mrs. Petrone, stated that her mother could not afford to defray the cost out of a rental of $40 per month; and that it was finally agreed that the repairs would be made in the spring of 1943 and that the plaintiff would pay $60 of the cost at the rate of $5 per month.

The plaintiff denied the truth of these statements of Mrs. Petrone. He produced receipts for each of five months beginning October 1, 1942, four of them signed by Mrs. Sofia and one

by her husband. These receipts were admittedly prepared by the plaintiff and each recited the payment of $45 and bore a notation that this amount was $5 in excess of the rate in force on March 1st, which was paid under protest. It should be noted here that the plaintiff appeared to be a well-educated, keen, resourceful and well-poised person. His qualities had raised him above many members of his race. At least he had become chief of redcaps at the New York Central station. On the other hand it was obvious that Mrs. Petrone and Mrs. Sofia were comparatively dull, poorly informed and lacking in perception and understanding.

It was established that prior to October 1, 1942, Mrs. Sofia, acting for her mother, filed a statement with the local rent control office of the Office of Price Administration, a declaration that the rate of rental was $45. She said that she stated the facts to a young lady clerk in that office, who made out the paper. Thereafter, the plaintiff, after receiving the required notice, entered objections, and when these were communicated to the defendant, Mrs. Petrone who claims to have made the agreement as to repairs and decorations filed an amended declaration fixing the rental rate at $40.

Subsequently to February 1, 1943, and after discussions between the parties and with the rent office of the Office of Price Administration, the defendant sent a post-office money order for $25 to the plaintiff as a refund of the alleged excess, but the latter refused to accept and returned it.

At the close of the case the defendants moved for dismissal of the complaint upon the ground that the court lacked jurisdiction of the action. This was but a renewal of a like motion decided adversely to the defendants upon grounds stated in the opinion filed herein on June 2, 1943. There remains one question on the merits, whether the alleged excesses collected were for repairs and decorations or were an increase of rents.

As a measure to prevent or punish profiteering the Price Control Act is salutary legislation. The penalties imposed are by no means excessive as applied to the deliberate profiteer. But nothing in the content of the Act appears designed to suspend all processes of justice or to impair the concepts of ethics and morality. It neither states nor implies that one who has been sufficiently frugal to acquire a modest property is to be regarded with suspicion. It does not require that nobler motives be ascribed to one who seeks to recover the penalties imposed than to him upon whom they are imposed. It does not relieve the plaintiff of the burden of establishing his case by the fair preponderance of the credible evidence.

Assuming, then, that there has been no relaxation of the tried and proven concepts of justice, this case presents no difficulty. A keen and calculating tenant seeks to convert an agreement to share the expense of repairs and improvements which, for anything that appears, it was his duty to make, into a demand for increased rent. The inexperienced and bewildered daughters of an incapacitated landlord err upon the advice of a forgivably inexperienced and bewildered member of the personnel of a hastily constituted office of the Office of Price Administration.

Reduced to essentials, this case involves an agreement by the plaintiff to pay $5 per month to defray a part of the cost of repairs and decorations which it was his duty to make, a simple and entirely lawful contract. It did not constitute a raise of rent, nor a cover therefor, nor in any sense an evasion of the law. The attempted refund is not inconsistent with this view. When the astute tenant disavowed his agreement and sought to convert it into an excessive exaction of rent, the defendants were freed of their obligation to make the improvements and a refund of the additional payments was the just course.

Let judgment enter in favor of the defendants dismissing the complaint, with costs.